IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| REALSOURCE BROKERAGE SERVICES, L.C., a Utah limited liability company,<br><br>    Plaintiff,<br><br><br><br><br><br>    vs.<br><br><br>DEAD MULE LAND & CATTLE COMPANY, LLC d/b/a LONESTAR COMMERCIAL, a Texas entity; RICK SHERWOOD, an individual; MARTY CLECKLER, an individual; KIM THIEL, an individual; MEREDITH WIDEMAN, an individual; and VANESSA HILL, an individual,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND DENYING DEFENDANTS' MOTION TO STRIKE<br><br><br><br><br><br>Case No. 2:06-CV-000762 TS |

## I.  INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss for Lack of

Jurisdiction, and Defendants' Motion to Strike December 12, 2006 Declaration of Kara M.

Houck.  For the reasons explained below, the Court will deny the Motion to Dismiss as to Defendants LoneStar and Sherwood, and will grant the Motion to Dismiss as to Defendants Cleckler, Thiel, Wideman and Hill.  The Court will also deny as moot the Motion to Strike the December 12, 2006 Declaration of Kara M. Houck.

## II.  BACKGROUND

Plaintiff RealSource is a Utah limited liability company in the business of assisting clients to invest in multi-family properties throughout the country.  Defendants are: LoneStar, a Texas limited liability company; Rick Sherwood[1]; Marty Cleckler; Kim Thiel; Meredith Wideman; and Vanessa Hill.  All Defendants are residents of Texas.

In its Complaint, RealSource alleges: (1) that LoneStar failed to pay referral commissions to RealSource, pursuant to a Broker Referral Agreement entered into by the parties on or about May 20, 2003;  (2) that LoneStar and the individual Defendants used RealSource's confidential and proprietary information in devising and operating a competing program; (3) that all Defendants violated Utah's Uniform Trade Secrets Act[2];  (4) that all Defendants breached a fiduciary duty to RealSource; (5) that all Defendants tortiously interfered with RealSource's economic relations; (6) that all Defendants violated the Lanham Act[3]; and (7) that all Defendants defamed RealSource in an email sent to at least one of  RealSource's clients.

The individual Defendants Sherwood, Cleckler, Wideman, Thiel and Hill are all tied to LoneStar to some degree; however, Sherwood is different from the other four individuals in that

---

[1] Mr. Sherwood is a principal of LoneStar, and signed the Referral Agreement between LoneStar and RealSource.

[2] Utah Code Ann. § 13-24-1.

[3] 15 U.S.C. § 1125

he signed the referral agreement, he solicited business from RealSource, and he started and directs LoneStar.

Based upon the submissions of the parties, the Court finds the following facts: LoneStar conducted due diligence tours of investment properties for RealSource clients in Texas. RealSource organized aspects of the tours from Utah, and LoneStar carried out the tours in Texas.  LoneStar, a brokerage firm, encouraged tour members to invest in the Texas properties. If investors did so, LoneStar was to then pay a referral fee to RealSource for any purchase made by a RealSource client that was referred to LoneStar for any of the tours.

During these events, LoneStar and Sherwood maintained somewhat regular contact with RealSource via telephone, email, fax and letter.  For example, in less than a one year period, LoneStar and Sherwood had approximately 750 communications with RealSource via email, fax, and letter.  LoneStar and Sherwood communicated with RealSource via telephone a minimum of approximately five times per week, during the last five months of their business relationship. Sherwood and Cleckler attended two RealSource seminars in Utah, upon invitation by RealSource.  Further, during one ten month period from August 2005 to June 2006, LoneStar and Sherwood communicated with RealSource via email, letter, and fax approximately seventy-five times per month.  At least one of the RealSource clients that purchased property through LoneStar is a resident of Utah. Apart from Sherwood and Cleckler's visits during the two seminars, no Defendant has ever been to Utah.

An email was sent from Sherwood to a RealSource client in California on July 24, 2006. The July 24th email bore the names of all Defendants.  Cleckler, Thiel, Wideman, and Hill have each submitted affidavits denying: (1) any knowledge of the email; and (2) signing or

3

participating in the creation of the email.  Sherwood submitted an affidavit corroborating this information, stating that he created the email, added the other names without their knowledge or consent, and sent the email himself.

### III.  DISCUSSION

**A.  Motion to Strike the December 12, 2006 Declaration of Kara M. Houck.**

In her December 12, 2006 Declaration, Ms. Houck, Counsel for Plaintiff, testifies regarding the dates of formation of LoneStar, based on information she received from "a company that conducts [business record] searches."  Defendants moved to strike this Declaration on the grounds that it constitutes inadmissible double hearsay.  Plaintiff, in its response, attaches admissible documents relating to the formation of LoneStar, and asserts that the issue is now moot.[4]  Defendants, in their reply, agree that the new documents provided by Plaintiff are admissible under the evidentiary rules; however Defendants dispute that the documents should be submitted as a replacement for any of the dates in Plaintiff's Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

The Court will deny the Motion to Strike the December 12, 2006 Declaration of Kara M. Houck as moot, due to the subsequent submission of admissible documents establishing the timeline of LoneStar's existence.

**B.  Motion to Dismiss for Lack of Personal Jurisdiction**

"To obtain personal jurisdiction … a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due

---

[4] *Id.* at 2.

process clause of the Fourteenth Amendment."[5]  "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[6]

In order to satisfy the constitutional, due process requirement, Plaintiff must make a prima facie showing[7] as to each Defendant that "minimum contacts" exist between the Defendant and the forum state.[8] Here, Plaintiff acknowledges there are not sufficient contacts between any Defendant and Utah so as to satisfy the requirements for general personal jurisdiction.  Instead, Plaintiff claims all Defendants are subject to specific personal jurisdiction.

When the "Defendant has 'purposefully directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that "arise out of or relate to those activities."[9]  There must be "some act by which the Defendant purposefully avails of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[10]  Once the Court finds a Defendant had adequate minimum contacts with the forum state, the Court must also determine that personal jurisdiction is reasonable in

---

[5] *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995).

[6] *Systems Designs, Inc. v. New Customward Co.*, 248 F.Supp.2d 1093, 1097 (D. Utah 2003).

[7] *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[8] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[9] *Burger King v. Rudzewicz*, 471 U.S. 462, at 472-73 (1985).

[10] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

light of the circumstances surrounding the case, which is to say that exercising jurisdiction would not offend traditional notions of fair play and substantial justice.[11]

Plaintiff argues that all Defendants had sufficient minimum contacts to satisfy due process requirements. In support of this argument, Plaintiff provides in its memorandum allegations of numerous communications with RealSource by LoneStar and Sherwood, including two trips to Utah where Sherwood solicited business from RealSource.  Plaintiff also argues that the July 24th email which bore the signatures of all Defendants caused such foreseeable harm in Utah that all Defendants are properly subject to specific personal jurisdiction.

As noted above, for purposes of determining if jurisdiction is proper, Defendants Cleckler, Thiel, Wideman and Hill should be considered separately from LoneStar and Sherwood.  Plaintiff does not allege that Cleckler, Thiel, Wideman and Hill should be subject to personal jurisdiction for having done substantial business in Utah, but rather for causing injury to a Utah company through tortious conduct.  However, as noted above, these Defendants have submitted affidavits denying any involvement in the July 24th email, which affidavits have been corroborated by the affidavit of Defendant Sherwood.  Plaintiff has not responded to the affidavits of the individual Defendants in which they deny involvement in the email.  Therefore, Plaintiff has failed to show that these Defendants have sufficient minimum contacts with Utah. However, even if Plaintiff could show that the individual Defendants signed the July 24th email or caused it to be sent, it is unlikely such an act would be sufficient for establishing personal jurisdiction over the individual Defendants, where the email was not aimed at Utah, and Plaintiff

---

[11] *Burger King*, 471 U.S. at 476.

6

has not shown that it was sent to, or received in Utah.[12]  Plaintiff has the burden of proving the email was sent to Utah.  Plaintiff has clearly not met its burden of establishing the email was sent to or received in Utah, but rather, the only evidence before the Court shows that the email was sent from Texas to California.

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the Defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor."[13]  Plaintiff alleges LoneStar and Sherwood have done substantial business in Utah, and that RealSource's claims have their basis therein.  In the case of *Pro Axess, Inc. v. Orlux Distribution, Inc.*, the Tenth Circuit reasoned that while the formation of a contract between a non-resident Defendant and a Plaintiff is not enough to allow a Utah court to exercise jurisdiction, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and sanctions in the other state for the consequences of their activities."[14]  In *Pro Axess*, a Defendant's solicitation of the plaintiff's services was some evidence of "purposeful availment."[15]  Like the nonresident Defendant in *Pro Axess*, Defendants LoneStar and Sherwood entered into a contract with RealSource and solicited continuing business with RealSource in Utah.  In *Pro Axess*, the Tenth Circuit also held that while "phone calls and letters are not

_____

[12] *Calder v. Jones*, 465 U.S. 783 (1984) (Holding that defamatory communication published in magazine which Plaintiffs knew circulated in California was enough to establish personal jurisdiction over non-resident Defendants, since Defendants "aimed" communication at California).

[13] *Burger King*, 471 U.S. at 472-73.

[14] *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005).

[15] *Id.*

necessarily sufficient in themselves to establish minimum contacts; such materials provide additional evidence that [Defendant] pursued a continuing business relationship with a Utah corporation."[16]  Plaintiff's jurisdictional facts regarding LoneStar and Sherwood's regular contacts with Utah are similarly telling of their continual business relationship with RealSource.

Further, a choice of law provision is a significant factor in determining personal jurisdiction.[17]  The choice of law provision in the Referral Agreement stipulating that Utah law will govern the agreement is further evidence of Defendants LoneStar and Sherwood's purposeful availment of Utah.

Therefore, Plaintiff's jurisdictional facts regarding LoneStar and Sherwood's contacts with Utah, the fact that LoneStar and Sherwood contracted to do business with a Utah company, the fact that the referral agreement contained a choice of law provision choosing Utah law, and the solicitation of RealSource's business by LoneStar and Sherwood are sufficient minimum contacts for due process purposes.

Plaintiff must then show that a nexus or relationship exists between Plaintiff's claims and LoneStar and Sherwood's contacts with the forum.[18] The "nexus" requirement may be met by looking at a totality of the facts, including the formation or breach of a contract with a Utah Plaintiff and correspondence between parties.[19]   Further, the "nexus" requirement "should be

---

[16] *Id.* at 1277, 1288 (citing *Far West Capital*, 46 F.3d at 1077).
[17] *Burger King*, 471 U.S. at 481-82.

[18] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999).

[19] *STV Int'l Mktg. v. Cannondale Corp.*, 750 F.Supp. 1070, 1076-77 (D. Utah 1990).

applied so as to assert jurisdiction over non-resident Defendants to the fullest extent permitted by the due process clause."[20]

The Court finds that Plaintiff here fails to show a nexus exists between Cleckler's contacts with the forum and the causes of action against him, where the only contacts alleged, other than the July 24th email, are Cleckler's two trips to Utah.  These trips are not only not sufficient minimum contacts to establish jurisdiction over Cleckler, but the trips are not related to the causes of action against Cleckler.  Therefore, as to Cleckler, the "nexus" requirement is clearly not met.

As to LoneStar and Sherwood, Plaintiff's claims arise under LoneStar and Sherwood's business contacts with Utah, including entering into and subsequently allegedly breaching the Referral Agreement. The claims are based on the business relationship between RealSource, and LoneStar and Sherwood.  Therefore, there is a sufficient nexus as to LoneStar and Sherwood.

The Court will dismiss Defendants Cleckler, Thiel, Wideman, and Hill, without prejudice for lack of jurisdiction.[21]  The Court will deny Defendants' Motion to Dismiss as to LoneStar and Sherwood.  LoneStar and Sherwood purposefully availed themselves of doing business with a Utah company, had sufficient minimum contacts with Utah, and Plaintiff's claims arise under those contacts.  LoneStar and Sherwood could reasonably foresee being haled into Utah courts.

## IV.  ORDER

Based upon the foregoing, it is therefore

---

[20] *Id.* at 1074.

[21] RealSource will still be able to seek damages on the July 24th email through Defendant Sherwood, who signed an affidavit acknowledging himself to be the sole author of the email.

ORDERED that Defendants' Motion to Strike the December 12, 2006 Declaration of Kara M. Houck (Docket No. 39) is DENIED as moot.  It is further

ORDERED that Defendants' Motion to Dismiss for Lack of Jurisdiction (Docket No. 13) is GRANTED as to Defendants Cleckler, Thiel, Wideman and Hill.  It is further

ORDERED that Defendants' Motion to Dismiss for Lack of Jurisdiction (Docket No. 13) is DENIED as to Defendants LoneStar and Sherwood.

DATED   June 7, 2007.

BY THE COURT:

_____

TED STEWART
United States District Judge